

**SO ORDERED.**
**SIGNED this 12th day of April, 2013**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:

ROBERT RAY DUNN,

      Debtor;


ADVANTAGE WINDOWS, INC.,

      Plaintiff

v


ROBERT RAY DUNN,

      Defendant.

No.  12-13450
Chapter 7



Adversary Proceeding
No.  12-1094

**Not For Publication. This case has limited precedential value.**

*Appearances for the Plaintiff*

> Samuel Jacob Gowin, Esq.
> 707 Georgia Avenue, Suite 300
> Chattanooga, Tennessee 37402

*Appearances for the Defendant*

> HARRISS HARTMANN LAW FIRM PC
> Brent James, Esq.
> P.O. Drawer 220
> 200 McFarland Building
> Rossville, GA 30741

**MEMORANDUM**

The Plaintiff Advantage Windows, Inc. ("Plaintiff" or "Advantage Windows") has filed

this adversary proceeding against the Defendant Debtor Robert Ray Dunn ("Debtor").

Advantage Windows seeks a determination from this court that the debts owed by Debtor to

Advantage Windows are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6).

The Debtor now moves to dismiss Advantage Windows' claims. [Doc. No. 13]. The Plaintiff

opposes the motion to dismiss. [Doc. No. 17].

The court has reviewed the briefing filed by the parties, the pleadings at issue, and the

applicable law and makes the following findings of fact and conclusions of law pursuant to Fed.

R. Bankr. P. 7052. The court has determined that it will DENY the motion to dismiss.

**I.      Background**

The Plaintiff's Complaint alleges that the Plaintiff is a business corporation organized in

Tennessee and authorized to conduct business in both Tennessee and Georgia. [Doc. No. 1,

Complaint, ¶ 8]. Plaintiff further alleges that it is a creditor of the Debtor. *Id.* at ¶ 9.

The Debtor resides at 1443 Roach Hollow Road, Ringgold, GA 30736. Complaint, ¶ 1.

The Complaint asserts that the Debtor lives in a manufactured home and that in early 2011 the

Debtor sought out the Plaintiff to replace the home's windows, doors, and siding and to add

decorative siding to the front deck. *Id.* at ¶ 11. The Complaint states that the "Defendant

informed Plaintiff that he would obtain financing from Wells Fargo Bank to pay $13,500.00

toward the purchase of materials and work with Plaintiff. Without this assertion by Defendant,

Plaintiff would not have entered into the agreement with Defendant." *Id.* at ¶ 12. The Plaintiff

alleges that the Debtor "did not complete the financing process with Wells Fargo, did not obtain

said financing, and did not intend to obtain financing." *Id.* at ¶ 13. The Complaint further states:

> At the time Plaintiff and Defendant negotiated for Plaintiff's products and
> services, Defendant held out that he had funding immediately available to make
> the down payment under the contract. Defendant asked Plaintiff to not cash
> Defendant's check ostensibly so Defendant could provide the funds from another
> source. Instead, Defendant never had the down payment available from any
> source and never made the down payment required by the contract.

*Id.* at ¶ 15. The Plaintiff asserts that it never would have worked on the Debtor's home

improvement project if the Debtor had not assured it that he had obtained funding for the down

payment. *Id.* at ¶ 16.

The Plaintiff alleges that on March 20, 2011 the parties entered into a contract pursuant to

which the Debtor agreed to pay $16,500, in the form of a $500 down payment and a balance due

of $16,000, for some renovations to his mobile home. Complaint, ¶¶ 17, 19. The Plaintiff

contends that the Debtor never provided the $500 down payment by writing a valid check to the

Plaintiff. *Id.* at ¶ 20. The Debtor attached a copy of the purchase agreement ("Purchase

Agreement") to his motion to dismiss. [Doc. No. 13-2]. The Purchase Agreement, a two-page

document, included handwritten specifications that described the work to be completed. The

description of the work included the removal of metal windows, siding and doors on the Debtor's

mobile home and the installation of replacement windows, siding, doors and gutters. *Id.* The

Purchase Agreement was signed by the Debtor only.

The Plaintiff further alleges that "[o]n March 21, 2011, after the Purchase Agreement was

executed Defendant sought to change the terms of the Purchase Agreement to include a different

door and different installation for one window. Parties agreed to the change in consideration of

an additional $250.00." Complaint, ¶ 21. The Plaintiff then contends that it "performed

according to the terms of the Purchase Agreement and was within one week of completing the

project on July 22, 2011. By letter dated July 22, 2011, Defendant notified Plaintiff that Plaintiff

was not allowed on Defendant's property upon charge of trespass." *Id.* at ¶ 24. Plaintiff asserts

that some of its materials still remain on Defendant's property. The Plaintiff's Complaint asks

this court to find the entire amount owed by the Debtor under the Purchase Agreement to be non-

dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6).

The Debtor filed his bankruptcy petition on July 6, 2012. [Bankr. Case No. 12-13450,

Doc. No. 1]. In his motion to dismiss he contends that the Plaintiff's allegation that he did not

secure a loan in an amount that would cover the cost of the Purchase Agreement is not true. He

has provided the court with copies of loan documents from Wells Fargo and Fidelity Investments

that purport to demonstrate that the Debtor had received loans in an amount sufficient to cover

the cost of the Purchase Agreement with the Plaintiff. [Doc. Nos. 11-1, 13-3].  These documents

indicate that Wells Fargo had issued the Debtor a credit card with a credit limit of $13,500. [Doc.

No. 11-1]. The undated loan documents include a copy of a "Charge Slip" written in the amount

of $16,500 separated into a $500 down payment and a $16,000 balance due. *Id.* at p. 2. The seller

listed on the Charge Slip is Advantage Windows, and the slip includes a description of windows,

doors, siding and gutters to be provided. *Id.*

The Debtor has also supplied the court with a copy of an Experian credit report that indicates a WFFNB/Home Projects credit card being issued in the amount of $13,500. [Doc. No. 11-1, p. 27]. The credit report indicates that the card was opened on April 1, 2011 and was not closed until December 2, 2011. *Id.*

The Debtor asserts that one of Plaintiff's employees, Danny Claire, informed the Debtor's wife that Wells Fargo only approved the loan for the windows in an amount of $13,500 rather than $16,000. [Doc. No. 13-1, Memorandum of Law in Support of Defendant's Motion to Dismiss, p. 2, ¶ 4]. According to the Debtor's briefing the Debtor's wife informed Mr. Claire that she would obtain the additional $2,500 needed to cover the cost of the Purchase Agreement by applying for a loan against her 401k. *Id.* The Debtor's wife also allegedly asked Mr. Claire to hold the $500 down payment check for two weeks before depositing it. *Id.* at p. 2, ¶ 5. On July 19, 2011 the Debtor's wife allegedly contacted her bank to determine whether the $500 down payment check had ever been deposited and learned that the Plaintiff had never deposited the check. *Id.* at p. 2, ¶ 7. On July 20, 2011 the Debtor's wife allegedly stopped payment on the check. *Id.* at p. 3, ¶ 8. All of these facts asserted by the Debtor are unsupported by the record as the Debtor and his wife have failed to submit any affidavits or declarations testifying to such alleged facts.

The Debtor has attached a copy of a $3,500 loan from Fidelity Investments that the Debtor contends was a loan from the Debtor's wife's 401k. [Doc. No. 13-3, Ex. B]. The exhibit provides that the loan origination date was July 27, 2011. *Id.* The Debtor contends that evidence of this loan, in addition to the credit card from Wells Fargo, indicates that the Debtor had the funds to cover the cost of the contract with Advantage Windows.

5

The Debtor has further directed this court's attention to four letters written to Wells Fargo regarding the Debtor's contract with the Plaintiff. [Doc. No. 11-1, Ex. E, pp. 33-37]. The first letter, dated July 19, 2011, states in part: "[t]his letter is to inform you that Advantage has breached their contract and therefore I am not authorizing you to pay them any amount of funds that they request from this loan and will dispute any amount paid to them." *Id.* at p. 33. A letter dated July 22, 2011 states in part: "[w]ith this letter, I formally revoke my authority to pay Advantage or any member, officer, affiliate, contractor or subcontractor of Advantage, for any amount of money claimed is owed to them. Advantage had failed to complete the contract and is, therefore, in breach of the contract. If anyone should attempt to access this line of credit, you are not authorized to pay out any amount and you are to contact me immediately." *Id.* at p. 35.

The Plaintiff notes in its opposition to the motion to dismiss that the Debtor's wife obtained her 401k loan only *after* the Debtor had already informed Wells Fargo not to pay the Plaintiff the amount due on the Purchase Agreement. The Plaintiff contends that there are issues of fact regarding the Debtor's intent and ability to pay the amount due under the Purchase Agreement and that its Complaint contains sufficient allegations to support its claims for relief. It further alleges that the Debtor failed to pay the second window installer, Maintenance Free Exteriors, as exhibited by the Debtor's listing of a $17,360 debt owed to Maintenance Free Exteriors on the Debtor's Schedule F relating to creditors holding unsecured nonpriority claims. *See* [Bankr. Case No. 12-13450, Doc. No. 1, p. 25]. The Plaintiff did not file any exhibits or affidavits with its opposition to the motion to dismiss.

## II.     Jurisdiction

28 U.S.C. §§ 157 and 1334, as well as the general order of reference entered in this district provide this court with jurisdiction to hear and decide this adversary proceeding.  The

Plaintiff's action regarding the dischargeability of particular debts is a core proceeding.  *See* 28

U.S.C. § 157(b)(2)(I), (J).

### III.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6), incorporated into adversary proceedings by

Federal Rule of Bankruptcy Procedure 7012(b), allows a party to move to dismiss a complaint

for failure to state a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).  In

reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must

"treat as true all of the well-pleaded allegations of the complaint." *Bower v. Federal Express*

*Corp.*, 96 F.3d 200, 203 (6th Cir. 1996)). In addition, a court must construe all allegations in the

light most favorable to the plaintiff.  *Bower*, 96 F.3d at 203 (citing *Sinay v. Lamson & Sessions*,

948 F.2d 1037, 1039 (6th Cir. 1991)).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has

been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 127 S.Ct. 1955,

1969 (2007).  The complaint " 'must contain either direct or inferential allegations respecting all

the material elements to sustain a recovery under *some* viable legal theory.' " *Allard v. Weitzman*

*(In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Scheid v. Fanny*

*Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

In support of his motion to dismiss, the Debtor has referenced three documents that were

not filed with the Plaintiff's Complaint, Exhibit A to the Debtor's Initial Disclosures and

Exhibits A and B attached to the Debtor's Motion to Dismiss. [Doc. Nos. 11-1 and 14-2]. The

Sixth Circuit has instructed  lower courts that they must not consider matters beyond the

complaint when resolving a motion to dismiss. *See Winget v. JP Morgan Chase Bank, N.A.*, 537

F.3d 565, 576 (6th Cir. 2008). If documents outside the complaint are considered, the court must

convert the motion to dismiss into a motion for summary judgment and give the parties a

reasonable time to present all evidence in support of such a Rule 56 motion. *Id.* (citing

*Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001)).

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56

applicable to bankruptcy adversary proceedings.  *See* Fed. R. Bank. P. 7056. Summary judgment

is appropriate if there is no genuine issue as to any material fact and the moving party is entitled

to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show

conclusively that no genuine issue of material fact exists, and the Court must view the facts and

all inferences to be drawn therefrom in the light most favorable to the nonmoving party.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete*

*Carrier Corp.*, 105 F.3d 279, 280-81 (6th  Cir. 1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d

1432, 1435 (6th Cir. 1987); *Kava v. Peters*, No. 09-2327, 2011 WL 6091350, at *3 (6th Cir. Dec.

7, 2011).

Once the moving party presents evidence sufficient to support a motion under Fed. R.

Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations.  The

nonmoving party is required to come forward with some significant probative evidence which

makes it necessary to resolve the factual dispute at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *60 Ivy Street*, 822 F.2d at 1435.  The moving

party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing

on an essential element of the nonmoving party's case with respect to which the nonmoving party

has the burden of proof.  *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir.

1996).

Rule 56(c)(4) also requires that affidavits or declarations used to support a motion for summary judgment be based on personal knowledge with facts that would be admissible in evidence. Fed. R. Civ. P. 56(c)(4). Further, "the summary judgment motion is not a procedural shortcut, and should only be used after a court is absolutely convinced that the requirements needed to grant the motion have been satisfied." *Colonial Pacific Leasing v. Mayerson (In re Mayerson)*, 254 B.R. 407, 410 (Bankr. N.D. Ohio 2000).

Because the Debtor relies on documents beyond the Complaint in support of the motion to dismiss, the court must convert the motion to dismiss to one for summary judgment. However, the court notes that many of the facts alleged by the Debtor in support of the motion to dismiss are not supported by declarations based on personal knowledge as required by Fed. R. Civ. P. 56(c). In addition, the court recognizes that generally it should provide the Plaintiff with an opportunity to respond to the converted motion for summary judgment; however, because the court finds that genuine issues of material fact exist even without the Plaintiff's supplemented response, the court will proceed to resolve the motion for summary judgment.

## IV.    Analysis

### A.    Legal Standards

11 U.S.C. § 727 provides for discharge from debt unless excepted from discharge pursuant to 11 U.S.C. § 523.  The Plaintiff asks this court to find the unpaid $16,500 debt owed pursuant to the Purchase Agreement non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(6).

### 1.    Non-dischargeability Pursuant to 11 U.S.C. § 523(a)(2)(A)

11 U.S.C. § 523(a)(2)(A) states in relevant part:

A discharge under section 727 . . . of this title does not discharge an individual
debtor from any debt − . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . .

11 U.S.C. §§ 523(a)(2)(A).

The Sixth Circuit has held that to demonstrate nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A), a creditor must prove four elements:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998). As noted below, the court finds that issues of fact exist as to these elements. The Plaintiff asserts that the Debtor never had the funding to pay for the renovations. The Debtor contends he did, but offered assertions that showed the entire contract amount was not available until after the construction dispute had arisen.

## 2.      Non-dischargeability Pursuant to 11 U.S.C. § 523(a)(6)

11 U.S.C. §§ 523(a)(6) states in relevant part:

A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt – . . .

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

11 U.S.C. §§ 523(a)(6). "[T]he judgment must be for an injury that is both willful and malicious. The absence of one creates a dischargeable debt." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999). The U.S. Supreme Court has addressed the meaning of

10

"willful" within the context of § 523(a)(6).  *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974

(1998).  As summarized by the Sixth Circuit: "[t]he Court held that "willful" means "voluntary,"

"intentional," or "deliberate."  As such, only acts done with the intent to cause injury – and not

merely acts done intentionally – can cause willful and malicious injury." *In re Markowitz*, 190

F.3d at 464 (relying on *Geiger*, 523 U.S. at 61-62, 118 S.Ct. at 977).

### B.      Application of Summary Judgment Standards to Debtor's Evidence

As noted *supra*, the court must convert the Debtor's motion to dismiss to a motion for

summary judgment due to the Debtor's reliance on documents outside of the pleadings in support

of his motion to dismiss. *See Winget*, 537 F.3d at 576. In making such a conversion, the court

generally needs to provide the opposing party with notice of the conversion to summary

judgment and an opportunity to supplement the record with additional admissible evidence

before the court rules on the motion. However, in this case, due to the impending trial date in this

proceeding and the court's determination that genuine issues of material fact remain for trial, the

court will proceed to deny the motion for summary judgment without needing to provide the

Plaintiff with an opportunity to supplement the record.

First, the court notes that the alleged facts regarding the Debtor's wife's 401k loan and

her alleged conversation with Mr. Claire, as well as her assertions regarding the $500 deposit

check articulated in the Debtor's motion to dismiss have not been supported by affidavits or

declarations based on personal knowledge. Nor have the exhibits regarding the Debtor's alleged

loan transactions with Wells Fargo and Fidelity Investments been supported by declarations of

the Debtor or his wife based on their personal knowledge of the loan transactions. A motion for

summary judgment must be supported by admissible evidence. Fed. R. Civ. P. 56(c).

Second, the court further notes that "state of mind issues, such as whether a person acted in a fraudulent matter, are generally not to be disposed of upon summary judgment." *In re Mayerson*, 254 B.R. at 412. Section 523(a)(2)(A) and Section 523(a)(6) both involve delving into the Debtor's state of mind.

Third, on a motion for summary judgment the court must view the facts in the light most favorable to the non-moving party. In this case, the court views the facts most favorably toward the Plaintiff.  Even if the court considers the Debtor's alleged, but unsupported facts regarding the interactions between Plaintiff and Debtor, the court concludes that genuine issues of material fact exist regarding whether Debtor misrepresented his ability to cover the cost of the Purchase Agreement.

The court finds that the face of the documents themselves create a genuine issue of material fact regarding whether the Debtor truly intended to pay for the work covered by the Purchase Agreement or had the ability to do so. The $3,500 loan from Fidelity Investments is dated July 27, 2011. [Doc. No. 13-3]. By that date, the Debtor was already informing Wells Fargo that it was not authorized to pay Advantage Windows pursuant to the Purchase Agreement. *See* [Doc. No. 11-1, pp. 33-37]. The loan with Wells Fargo was only in the amount of $13,500, which was not enough to cover the $16,500 cost of the entire Purchase Agreement. [Doc. No. 11-1, p. 1; Doc. No. 14-1]. Therefore, it is unclear that the Debtor had sufficient funds available to pay for the Purchase Agreement prior to the time that the Plaintiff began performance of the contract. Further, the allegations regarding the insufficient funds for the down payment constitute a classic dispute of material fact. The Plaintiff contends there were never sufficient funds to cover the $500 down payment check; the Debtor contends that his wife contacted the bank to stop payment only after the Plaintiff failed to cash it for several months.

Viewing the facts in the light most favorable to the Plaintiff, the court cannot conclude that

Debtor has demonstrated a lack of a genuine issue of material fact regarding whether Plaintiff

can prove the elements of fraudulent misrepresentation at trial. Thus, the court will deny the

Debtor's motion with respect to the Plaintiff's Section 523(a)(2)(A) claim.

With respect to the Plaintiff's 11 U.S.C. § 523(a)(6) claim, the court concludes that it is a

close question whether the Plaintiff has adequately pled a willful and malicious injury in its

Complaint sufficient to meet the standards articulated by the Supreme Court in *Twombly*. 550

U.S. at 563. It is unclear what separate injury the Plaintiff is alleging beyond the contract dispute

related to the Purchase Agreement. The Plaintiff's allegation in the Complaint of a "Judgment

entered against the Debtor" is extremely vague. *See* Complaint, ¶ 33. The Plaintiff did not attach

a copy of the alleged judgment, nor did it describe the judgment with any level of detail, such as

date, amount, court, or case number. However, because the Debtor insists that no judgment

against him exists (*see* Doc. No. 13-1, p. 10), the court concludes that it must treat the parties'

dispute regarding the existence of a judgment relating to the alleged injury as raising genuine

issues of material fact that cannot be resolved on a motion to dismiss or a motion for summary

judgment.

Therefore, the Debtor's motion to dismiss, which this court has converted to a motion for

summary judgment, will be DENIED.

### V.    Conclusion

As noted *supra*, the court concludes that genuine issues of material fact exist regarding

whether the Debtor misrepresented his ability to cover the cost of the Purchase Agreement or

engaged in willful and malicious behavior. Therefore, the Debtor's motion to dismiss the

Plaintiff's claims pursuant to 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(6) will be

DENIED.

A separate order will enter.

# # #